IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **AMIGOS BRAVOS**, | )<br>) |
| Plaintiff, | ) Case No. 1:19-cv-852<br>) |
| v. | ) PETITION FOR REVIEW OF<br>) AGENCY ACTION |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ANDREW WHEELER,** in his official capacity as Administrator of the Environmental Protection Agency**; KEN MCQUEEN,** in his official capacity as Regional Administrator Environmental Protection Agency Region 6**,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## INTRODUCTION

1.  Plaintiff Amigos Bravos brings this action for declaratory and injunctive relief challenging the failure of the Federal Defendant, Environmental Protection Agency; Environmental Protection Agency Administrator, Andrew Wheeler; and Environmental Protection Agency Region VI Regional Administrator, Ken McQueen (collectively "EPA") to address the significant water quality problems in Los Alamos County caused by unregulated urban stormwater runoff, as required under the Clean Water Act. 33 U.S.C. §§ 1251, *et seq*. Specifically, Amigos Bravos is challenging EPA's failure to respond promptly to Amigos Bravos' Petition for a Determination that Storm Water Discharges in Los Alamos County Contribute to Water Quality Standards Violations and Require a Clean Water Act Permit ("Petition"), attached hereto as Exhibit A.

2.  EPA's failure to provide the required response to the petition has left the waters of

Los Alamos County unprotected from stormwater runoff from the developed and urban areas within the County.  As a result, the discharges of stormwater from municipal separate storm sewer systems ("MS4s") from developed and urban areas of Los Alamos County have caused or contributed to violations of one or more New Mexico water quality standards.  This runoff contains pollutants, such as gross alpha (a measurement of overall radioactivity), PCBs, aluminum, copper, radium, cyanide, mercury, and selenium.  The State of New Mexico has identified numerous water bodies in Los Alamos County as degraded by these types of pollutants, such that they are not fully supporting their designated beneficial uses.

3. Despite this, because of EPA's inaction, these discharges are not regulated under the Clean Water Act's National Pollutant Discharge Elimination System ("NPDES"), 33 U.S.C. § 1342, which requires the issuance of permits to reduce and eliminate the discharge of such pollutants to the maximum extent practicable and to address water quality impacts.

4. Amigos Bravos seeks declaratory relief against the EPA, in accord with the Clean Water Act ("CWA" or "Act") and Administrative Procedure Act ("APA"), for EPA's ongoing and arbitrary failure to respond to the Petition. Amigos Bravos also seeks injunctive relief, requiring EPA to provide the required response by a date certain, in compliance with the law.

5. If they prevail, Amigos Bravos will seek an award of attorneys' fees, costs, and other expenses pursuant to the Clean Water Act, 33 U.S.C. § 1365, and the Equal Access to Justice Act, 28 U.S.C. § 2412.

## JURISDICTION & VENUE

6.      This action arises under the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365(a)(2), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706, specifically sections 553(e), 555(b) and (e), and 706(l).

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The requested relief is proper under 28 U.S.C. § 2201(a), 28 U.S.C. § 2202, 33 U.S.C. § 1365(a), and 5 U.S.C. §§ 705, 706.

8.      This action reflects an actual, present, and justiciable controversy between Amigos Bravos and the Federal Defendants. Amigos Bravos and its members will suffer adverse and irreparable injuries-in-fact to their legally protected interests in the affected area's environmental resources if EPA continues to violate federal laws as alleged herein. These injuries are concrete and particularized and fairly traceable to EPA's failure to act, providing the requisite personal stake in the outcome of this controversy necessary for this Court's jurisdiction.

9.      The requested relief would redress Amigos Bravos' actual, concrete injuries caused by the EPA's failure to comply with duties mandated by CWA and the regulations promulgated pursuant thereto.

10.     On June 26, 2019, Amigos Bravos sent EPA the required Notice of Intent to Sue, pursuant to 33 U.S.C. § 1365(b)(1)(A). EPA has yet to submit a response to Amigos Bravos' notice letter.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because Los Alamos County is located in New Mexico, and therefore a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property

that is the subject of the action is situated in this district.  Venue is also proper under 28 U.S.C. § 1391(e)(1) because this is a civil action in which a defendant is an officer or employee of an agency of the United States acting in his official capacity and Amigos Bravos maintains its principal place of business in New Mexico.

## PARTIES

12.     Plaintiff AMIGOS BRAVOS is a nonprofit water protection organization whose mission is to protect and restore the waters of New Mexico. Amigos Bravos works to preserve the ecological and cultural integrity of New Mexico's watersheds by assuring compliance with environmental laws and holding polluters and governments accountable for their actions. Through this work, Amigos Bravos ensures that New Mexico's watersheds provide clean water for irrigating, swimming, fishing, and boating. Amigos Bravos' effort is inspired by New Mexico's traditional water users and guided by the vision of water as both a cultural and natural resource.  Amigos Bravos has members throughout New Mexico that use and enjoy the water resources of New Mexico for irrigation, livestock watering, fishing, recreation, spiritual pursuits, and aesthetic interests.  Amigos Bravos brings this action on its own behalf and on behalf of its adversely affected members

13.     Amigos Bravos' members use and enjoy the wildlands, wildlife habitat, rivers, streams, and healthy environment in and downstream from Los Alamos County for hiking, fishing, hunting, camping, photographing scenery and wildlife, wildlife viewing, aesthetic enjoyment, spiritual contemplation, religious practices and ceremonies, and engaging in other vocational, scientific, and recreational activities. Amigos Bravos' members derive recreational, inspirational, spiritual, religious, scientific, educational, and aesthetic benefit from their activities

in the County. Amigos Bravos' members intend to continue to use and enjoy these areas, and their cultural resources, wildlands, wildlife habitat, rivers, streams, and healthy environments frequently and on an ongoing basis long into the future.

14. Amigos Bravos and its members have a procedural interest in EPA's full compliance with the Clean Water Act, its substantive protections for water bodies from the impacts of stormwater runoff, and the Act's and its implementing regulations' procedural requirements.

15. The aesthetic, recreational, scientific, educational, spiritual, religious, and procedural interests of Amigos Bravos and their members who use lands in and around Los Alamos County have been adversely affected and irreparably injured by the EPA's failure to act on the Petition and to protect the County's waterbodies from stormwater runoff. These are actual, concrete injuries caused by EPA's failure to comply with mandatory duties under the Clean Water Act and its implementing regulations. The injuries would be redressed by the relief sought.

16. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a federal agency, is responsible for implementing the CWA. *See* 33 U.S.C. §§ 1251–1387.

17. Defendant ANDREW WHEELER is the Administrator of the EPA. In that role, he is charged with the duty to uphold the Clean Water Act and its implementing regulations and to take required regulatory actions according to the schedules established therein.

18. Defendant KEN MCQUEEN is the Regional Administrator of Region 6 of the EPA. In that role, he is charged with the duty to uphold the Clean Water Act and its

implementing regulations and to take required regulatory actions according to the schedules established therein.

## STATUTORY BACKGROUND

### A. The Clean Water Act

19. The Clean Water Act is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The primary goal of the CWA is to eliminate the discharge of pollutants into navigable waters entirely; it also establishes "an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife," *id*. § 1251(a)(1)–(2), and sets a "national policy that the discharge of toxic pollutants in toxic amounts be prohibited[.]" *Id*. § 1251(a)(3).

20. To meet these water quality goals, the CWA requires that states develop water quality standards that establish, and then protect, the desired conditions of each waterway within the state's regulatory jurisdiction. *See id*. § 1313(a); see also 40 C.F.R. § 131.11(a)(1). Water quality standards must include three elements: (1) one or more designated uses of a waterway; (2) numeric and narrative criteria specifying the water quality conditions, such as maximum amounts of toxic pollutants, maximum temperature levels, and the like, that are necessary to protect designated uses; and (3) an antidegradation policy that protects existing uses and ensures that high quality waters will be maintained. 33 U.S.C. §§ 1313(c)(2), (d)(4)(B); 40 C.F.R. Part 131, Subpart B. For waters with multiple uses designations, the criteria must support the most sensitive use.  40 C.F.R. § 131.11(a)(1).

21. The standards must be sufficient to protect the public health or welfare, enhance the quality of water and wherever attainable, provide water quality for the protection and

propagation of fish, shellfish and wildlife and for recreation in and on the water, taking into consideration their use and value for public water supplies, and agricultural, industrial, and other purposes including navigation.  *See* 33 U.S.C. § 1313(c)(2)(A).  These standards serve as the regulatory basis for water quality-based treatment controls and strategies. See 40 C.F.R. § 131.2.

24.

22. States have the primary responsibility for reviewing, establishing, and revising water quality standards for those waters within their borders.  *See* 33 U.S.C. § 1313(c)(1).  New Mexico has established, and EPA has approved, water quality standards pursuant to this requirement.

23. Section 303(d)(2) of the CWA requires States to "submit to the Administrator from time to time" a list of "waters identified and loads established under" subsections 303(d)(1)(A)–(D), including, among other components, a list of waters for which technology-based effluent limitations "are not stringent enough to implement any water quality standard applicable to such waters."  33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. §§ 130.7(b); 130.10(b), (d).

24. Such waters are called "water quality limited" or "impaired" waters.  40 C.F.R. § 131.3(h) ("*Water quality limited segment* means any segment where it is known that water quality does not meet applicable water quality standards, and/or is not expected to meet applicable water quality standards." (emphasis in original)).

25. In order to ensure that such water quality standards will be achieved, no person may discharge any pollutant into waters of the United States from a point source without a National Pollutant Discharge Elimination System ("NPDES") permit.  33 U.S.C. §§ 1311(a), 1362(12)(A).  NPDES permits must impose water quality-based effluent limitations, in addition

to any applicable technology-based effluent limitations, when necessary to meet water quality standards.  33 U.S.C. § 1311(b).

26. The Act defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14). EPA's Clean Water Act regulations further specify that "discharge of a pollutant" includes "additions of pollutants into waters of the United States from[] surface runoff which is collected or channeled by man."  40 C.F.R. § 122.2.

27. The Clean Water Act requires NPDES permits for discharges of industrial and municipal storm water. 33 U.S.C. § 1342(p)(2).  Municipal separate storm sewer system ("MS4") are separate storm sewers and are categorized by EPA as large, medium, or small.  40 C.F.R. § 122.26(b)(18).

28. A small MS4 is a storm sewer system "[o]wned or operated by the United States, a State, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to State law) having jurisdiction over disposal of sewage, industrial wastes, storm water, or other wastes" in any place with a population under 100,000 people, that is not otherwise designated as a large or medium MS4.  *Id*. § 122.26(b)(16)(i)-(ii). Sewer systems "similar to separate storm sewer systems in municipalities, such as systems at military bases, large hospital or prison complexes, and highways and other thoroughfares" are also small MS4s. *Id*. § 122.26(b)(16)(iii).

29. The permitting agency must designate a small MS4 for regulation under the NPDES permitting program when it determines the MS4 "has the potential to result in exceedances of water quality standards, including impairment of designated uses, or other

significant water quality impacts, including habitat and biological impacts." 40 C.F.R. § 123.35(b)(1)(i). EPA has stated that "significant water quality impacts" may occur when the MS4 discharges to sensitive waters or is a significant contributor of pollutants to waters of the United States, and there is ineffective protection of water quality by other programs. 40 C.F.R. § 123.35(b)(1)(ii).

30. The Clean Water Act mandates that EPA require NPDES permits for any storm water discharge that the Administrator or the State director determines "contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States." 33 U.S.C. § 1342(p)(2)(E); 40 C.F.R. § 122.26(a)(1)(v). This catch-all authority — known as the "residual designation authority"— ensures that problematic discharges of storm water do not go unregulated.

31. Once EPA has made a finding or determination that a category of discharges meets the statutory criterion of "contribut[ing] to a violation of a water quality standard," it must designate that category for regulation, and those "operators shall be required to obtain a NPDES permit." 40 C.F.R. § 122.26(a)(9)(i)(D).

32. Citizens may petition the permitting agency "to require a NPDES permit for a discharge which is composed entirely of storm water which contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States." 40 C.F.R. § 122.26(f)(2).

33. EPA "shall make a final determination on any petition received under this section within 90 days after receiving [such a] petition." 40 C.F.R. § 122.26(f)(5).

34. A citizen may also petition the permitting agency for the designation of a large, medium, or small municipal separate storm sewer system. 40 C.F.R. § 122.26(f)(4).

35. EPA must make a final decision on any such petition to designate a small MS4 within 180 days. 40 C.F.R. § 122.26(f)(5).

36. In New Mexico, EPA Region VI is the permitting agency.

### B. Administrative Procedure Act

37. The APA provides a right to judicial review to any "person suffering legal wrong because of agency action." 5 U.S.C. § 702. Actions that are reviewable under the APA include final agency actions "for which there is no other adequate remedy in a court." *Id.*

38. Under the APA, a reviewing court shall, *inter alia*, "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency actions may also be set aside in other circumstances, such as where the action is "without observance of procedure required by law." 5 U.S.C. § 706(2)(B)-(F).

## STATEMENT OF FACTS

### A. Environmental Impacts of Stormwater Runoff in Los Alamos County, NM

39. Los Alamos County is located in north-central New Mexico, approximately 60 miles northeast of Albuquerque and 25 miles northwest of Santa Fe. The County's two main population centers are Los Alamos Townsite and the community of White Rock Canyon.

40. Los Alamos County is also home to the 36 square mile Los Alamos National Laboratory ("LANL").

41. The Los Alamos Townsite and the urbanized areas of LANL sit on the Pajarito

Plateau, which consists of a series of finger-like mesas separated by deep east-to-west-oriented canyons cut by streams.

42. The LANL property contains all or parts of seven primary watersheds that drain directly into the Rio Grande, including: Los Alamos, Sandia, Mortandad, Pajarito, Water, Ancho, and Chaquehui Canyons.

43. The Los Alamos Townsite and the urbanized areas of LANL drain into five canyons: Los Alamos, Pueblo, Sandia, Bayo, and Mortandad Canyons.

44. Stormwater runoff poses a significant threat to water quality. Stormwater runoff is generated from rain and snowmelt events that flow over land or impervious surfaces, such as paved streets, parking lots, and building rooftops, and does not soak into the ground. The runoff picks up pollutants like trash, chemicals, oils, and dirt/sediment that can harm rivers, streams, and lakes.

45. In addition to carrying "conventional" pollutants (e.g., increased temperature, pH, low dissolved oxygen, and turbidity), stormwater runoff also contains toxic pollutants such as heavy metals, oil and grease, pesticides, and organic compounds. Stormwater runoff from residential, commercial, and industrial areas also impact nearby waterways as a high volume of flow contributes to erosion and sedimentation, and affects aquatic habitats.

46. Many of the watersheds in Los Alamos County are highly polluted and are water quality limited because they do meet New Mexico's water quality standards.

47. Water quality standards for waters in Los Alamos County are detailed in the New Mexico Administrative Code ("NMAC") at sections 20.6.4.114, 20.6.4.126, 20.6.4.127, and 20.6.4.129, and include various designated uses such as high quality aqutic life, livestock

watering, primary contact and wildlife habitat. There are numeric criteria for numerous pollutants such as PCBs, copper, mercury, gross alpha, silver, selenium, and aluminum that also apply to these waters. These pollutants are known to be discharged with stormwater.

48. Los Alamos Canyon within LANL property is impaired for gross alpha (a measurement of overall radioactivity), PCBs, aluminum, radium, cynanide, mercury, and selenium.

49. The same is true of several other areas throughout the county, including but not limited to:

    a. Sandia Canyon: Impaired for PCBs, aluminum, copper, gross alpha, and mercury.

    b. Pueblo Canyon: Impaired for gross alpha, PCBs, aluminum, copper, and temperature and mercury.

    c. Mortandad Canyon: Impaired for PCBs, mercury, copper, and gross alpha.

    d. Pajarito Canyon: Impaired for gross alpha, aluminum, PCBs, silver, mercury, cyanide, and copper.

    e. Acid Canyon: Impaired for aluminum, copper, gross alpha and PCBs

    f. DP Canyon: Impaired for aluminum, copper, gross alpha, and PCBs.

    g. Arroyo de la Delfe: Impaired for aluminum, copper, gross alpha, and PCBs.

    h. Three Mile Canyon: Impaired for gross alpha

    i. Canada del Buey: Impaired for gross alpha and PCBs.

    j. Canon de Valle: Impaired for gross alpha and PCBs.

    k. Chaquehul Canyon: Impaired for PCBs.

50. The New Mexico Environment Department ("NMED") has concluded that in many of these areas urban runoff is the cause of these water pollution problems. NMED has repeatedly noted that impervious surface/parking lot runoff, post-development erosion and

sedimentation, and industrial/commercial site stormwater discharge, are causing, or at least contributing to, these issues.

51.     For example, in its 2012-2014 report on water quality issues in the state, the State of New Mexico found that water quality in Sandia, Mortandad, Pajarito, and Pueblo Canyons is impaired because of urban-related causes such as impervious surfaces, parking lots, construction, and development.  NMED data also shows substantial water quality impairment in Los Alamos Canyon downgradient from most of the urbanized areas at LANL.

52.     In addition, LANL has published two detailed studies of stormwater runoff from the Pajarito Plateau, focusing respectively on PCB contamination and metals contamination.  Los Alamos National Laboratory, Polychlorinated Biphenyls in Precipitation and Stormwater within the Upper Rio Grande Watershed 2 (May 2012) (LA-UR-12-1081) ("PCB Report") and Los Alamos National Laboratory, Background Metals Concentrations and Radioactivity in Storm Water on the Pajarito Plateau Northern New Mexico 2 (April 2013) (LA-UR-13-22841) ("Metals Report").  These studies show a significant contribution of both PCBs and metals from urban runoff on the Pajarito Plateau.

53.     Specifically, the LANL PCB Report found 40 of the 41 Los Alamos urban stormwater samples were above the New Mexico Human Health water quality criteria for PCBs and 19 of the 41 Los Alamos urban stormwater samples were above the New Mexico Wildlife Habitat water quality criteria for PCBs.  The LANL report concluded that suspended PCBs carried by urban runoff from the Los Alamos Townsite were 10 to 200 times more enriched with PCBs than at non-urban influenced Pajarito Plateau sites.

54.     These findings are consistent with information gathered by NMED in 2006 and

2007.  There, NMED collected stormwater samples from urban sites containing PCBs as high as 255 times the state's PCB Human Health water quality criteria.  NMED sampling data in 2006 and 2007 show levels of PCBs in stormwater draining off of urban areas in Los Alamos Townsite to be more than 34,000 times greater than the New Mexico Human Health water quality criteria.

55. With respect to metals, LANL's Metal Report, which studied metal contamination in stormwater runoff from urban areas at LANL and the Los Alamos Townsite, found exceedances of New Mexico water quality criteria for cadmium, copper, and zinc.  In addition, the LANL Metals Report demonstrated that values for copper, zinc, and nickel in urban stormwater runoff in Los Alamos County substantially exceeded non-urban influenced Pajarito Plateau stormwater concentrations.

56. The LANL studies of PCB and metal-contaminated runoff tie these contaminants to the urban areas of the Pajarito Plateau.

**B.     Amigos Bravos' Petition**

57. On June 30, 2014, Amigos Bravos' petitioned EPA for a determination that stormwater discharges in Los Alamos County contribute to water quality standards violations and require a Clean Water Act permit.  Exhibit A.

58. On March 17, 2015, EPA made a "preliminary determination" that discharges of stormwater on LANL property and urban portions of Los Alamos County are causing or contributing to "exceedances of state water quality standards, including impairment of designated uses, or other significant water quality impacts such as habitat and biological impacts."  Letter, R. Curry, Regional Administrator, EPA Region 6 to R. Conn, Projects

Director, Amigos Bravos (March 6, 2015).

**59.** EPA subsequently held a public comment period on the preliminary designation. 80 Fed. Reg. 13,852 (Mar. 17, 2015). The comment period closed on June 15, 2015.

**60.** Since that time, EPA has made no apparent progress on issuing a final determination to designate these discharges as requiring NPDES permit coverage.

## CLAIMS FOR RELIEF

### First Claim for Relief

### (Violation of CWA—Failure to Respond to the Petition)

**61.** The allegations made in all preceding paragraphs are re-alleged and incorporated by this reference.

**62.** Under the Clean Water Act's implementing regulations any person may petition the EPA to require a NPDES permit for a discharge which is composed entirely of storm water which contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States within 90 days. 40 C.F.R. § 122.26(f)(2).

**63.** Amigos Bravos submitted such a petition to EPA on June 30, 2014.

**64.** The Clean Water Act's implementing regulations expressly require EPA to make "a final determination on any petition received under [40 C.F.R. § 122.26(f)(2)] within 90 days after receiving the petition." 40 C.F.R. § 122.26(f)(5).

**65.** EPA has failed to provide Amigos Bravos with a final determination on its Petition.

**66.** EPA's failure to act is a violation of the Clean Water Act and its implementing regulations.

**Second Claim for Relief**

**(Violation of CWA—Failure to Respond to the Petition)**

67. The allegations made in all preceding paragraphs are re-alleged and incorporated by this reference.

68. Under the Clean Water Act's implementing regulations any person may petition the EPA "for the designation of a large, medium, or small municipal separate storm sewer system as defined by paragraph (b)(4)(iv), (b)(7)(iv), or (b)(16) of this section." 40 C.F.R. § 122.26(f)(4).

69. Amigos Bravos submitted such a petition to EPA on June 30, 2014.

70. The Clean Water Act's implementing regulations expressly require EPA "shall make a final determination on the petition within 180 days after its receipt" of any petition under 40 C.F.R. § 122.26(f)(4) to designate a small MS4. 40 C.F.R. § 122.26(f)(5).

71. EPA has failed to provide Amigos Bravos with a final determination on its Petition.

72. EPA's failure to act is a violation of the Clean Water Act and its implementing regulations.

**Third Claim for Relief**

**(Violation of APA—Failure to Respond to the Petition)**

73. The allegations made in all preceding paragraphs are re-alleged and incorporated by this reference.

74. The APA requires agencies to conclude issues presented to them "within a

reasonable time" and empowers reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. §§ 555(b), 706(1).

75. Amigos Bravos' submission of its Petition to EPA in June 2014, triggered EPA's duty under the APA to conclude the issues presented in Amigos Bravos' Petition within a reasonable time.

76. As of the filing of this Complaint, EPA has not responded to the Petition.

77. EPA's failure to respond to the Petition represents a failure to conclude the issues presented in that Petition within a reasonable time.

78. EPA's failure to respond to the Petition constitutes an unreasonable delay of agency action under 5 U.S.C. § 706(1).

## RELIEF REQUESTED

WHEREFORE, Plaintiff Amigos Bravos respectfully requests that this Court:

A. Declare that Defendants have violated the Clean Water Act and its implementing regulations, and/or the APA by failing to respond with 90 days to Plaintiff's Petition to require a NPDES permit for a discharge which is composed entirely of storm water which contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States;

B. Declare that Defendants have violated the Clean Water Act and its implementing regulations, and/or the APA by failing to respond with 180 days to Plaintiff's Petition to designate areas with Los Alamos County as Small MS4s;

C. Order Defendants to issue, by a reasonable date certain, a final determination on the Petition to require a NPDES permit for a discharge which is composed

|  |  |
|---|---|
|  | entirely of storm water which contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States; |
| D. | Order Defendants to issue, by a reasonable date certain, a final determination on the Petition to designate areas with Los Alamos County as Small MS4s; |
| E. | Award the Plaintiffs their fees, costs, and other expenses as provided by applicable law; |
| F. | Provide any further relief that the Court views as just and equitable. |

Respectfully submitted this 16th day of September 2019,

/s/ Kelly E. Nokes
Kelly E. Nokes (NM Bar ID. 152525)
WESTERN ENVIRONMENTAL LAW CENTER
208 Paseo del Pueblo Sur, Suite 602
Taos, New Mexico 87571

Andrew Hawley (*pro hac vice application pending*)
WESTERN ENVIRONMENTAL LAW CENTER
1402 3rd Avenue, Suite 1022
Seattle, Washington 98101

*Counsel for Plaintiffs*

**Attachment A.  A Petition by Amigos Bravos for a Determination that Storm Water Discharges in Los Alamos County Contribute to Water Quality Standards Violations and Require a Clean Water Act Permit (June 30, 2014)**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PETITION FOR REVIEW was served on all counsel of record through the Court's ECF system on this 16th day of September 2019.

/s/ Kelly E. Nokes

*Counsel for Plaintiff*